IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILLIAM CONNER<br><br>        Plaintiff<br><br>    v.<br><br>BOROUGH OF EDDYSTONE, PA,<br>WILLIAM STEWART, KAREN REEVES,<br>DAVID PATERSON, and DESPO<br>TATASCIORE<br><br>        Defendants | CIVIL ACTION<br>NO. 14-06934 |

PAPPERT, J.                                                                                                       MARCH 6, 2015

<u>**MEMORADUM**</u>

      Plaintiff William Conner ("Conner") was discharged as Borough of Eddystone police chief on the same day he returned to work after a 14-month absence for an alleged work related injury.  (Compl. ¶¶ 14, 17, Doc. No. 1.)  Conner initiated this suit against the Borough of Eddystone (the "Borough") and the Borough Councilmembers who voted for Conner's removal, namely Defendants Stewart, Reeves, Paterson, and Tatasciore (the "Council Defendants").  Among other things, Conner alleges that he was terminated without notice and a hearing in violation of his federal and state due process rights and in retaliation for filing a workers' compensation claim.  Defendants move to dismiss all counts in the complaint for failure to state a claim upon which relief can be granted.  As explained below, the motion is granted in part and denied in part.

**Factual and Procedural Background**

      The Borough hired Conner as police chief on November 13, 2006.  (Compl. ¶ 12.)  Four years later, Conner hurt his back and sprained his right knee when he fell getting out of his patrol

car (the "2010 accident") (Mot. to Dismiss, Ex. A ¶ 2, Doc. No. 12.)[1]  Conner filed a workers' compensation claim for this injury and was out of work for the following two months.  (*Id.* ¶ 16.)  The Borough did not dispute that Conner was injured at work, but it did contest the extent of his injuries.  (*Id.* ¶ 6.)

Conner injured himself at work again on August 8, 2012 when he tripped over some newspapers that were lying on the office floor (the "2012 accident").  (*Id.* ¶ 17.)  Conner alleged that he hurt his back during this fall, but he did not miss any work immediately after the 2012 accident.  (*Id.* ¶¶ 17-18.)  Rather, he missed work a week later after he was taken from his home to a hospital by ambulance.  (*Id.* ¶ 18.)  Conner filed a workers' compensation claim for the 2012 accident, which the Borough contested.  Conner did not return to work for over 14 months, allegedly due to the 2012 accident.  (Compl. ¶ 14.)

On October 16, 2013, a workers' compensation judge issued a written decision regarding Conner's claims for both the 2010 and 2012 accidents.  (Mot. to Dismiss, Ex. A.)  The judge agreed with the Borough as to the extent of Conner's injuries from the 2010 accident and found that Conner had been fully recovered from those injuries for at least 14 months.  (*See id.* ¶ 33.)  The judge also found that Conner did not suffer a work related injury on August 8, 2012.  (*Id.* ¶ 45.)  On this point, the judge cited Conner's "lack of credibility during his live testimony . . . ."  (*Id.* ¶ 46.)

The following Sunday, the Borough mayor called Conner and ordered him to return to work.  (Compl. ¶ 15.)  Conner reported to work the next morning.  (*Id.* ¶ 16.)  That evening, the

---

[1] Exhibit A to Defendants' motion is a decision letter issued by a workers' compensation judge regarding Conner's workers' compensation claims.  The Court properly considers this letter in deciding Defendants' motion to dismiss because Conner does not dispute its authenticity, it is specifically referenced in paragraph 37 of the complaint, and it is integral to Conner's claims.  *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) ("[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."); *see also Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

Borough Council held a "special session" attended by the Council Defendants. (*Id.* ¶ 17.) Conner was discharged as police chief at the special session by unanimous vote of the Council Defendants. (*Id.*)

**Legal Standard**

A Rule 12(b)(6) motion tests the sufficiency of the factual allegations in the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). When confronted with a 12(b)(6) motion, a district court must conduct a two-step analysis. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the district court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Id.* at 210-11. Then, it "must determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). The district court must "construe the complaint in the light most favorable to the plaintiff . . . ." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

**Discussion**

<u>Conner's "Official Capacity" Claims and Request for Punitive Damages</u>

Before challenging the substance of the individual counts in the complaint, Defendants make two preliminary arguments. First, Defendants argue that all of Conner's claims against the Council Defendants in their official capacities must be dismissed as redundant of the claims against the Borough. It is true that an "official capacity" claim against a local government official is functionally a claim against the local government entity. *See Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985) ("There is no longer a need to bring official-capacity actions against local government officials, for under *Monell,* local government units can be sued directly for damages and injunctive or declaratory relief.") (citation omitted). That does not mean, however,

that the official capacity claims against the Council Defendants must be dismissed as redundant.[2] "Motions to dismiss pursuant to Rule 12(b)(6) test the validity of the complaint. A claim that is redundant is not necessarily invalid." *Crighton v. Schuylkill Cnty.*, 882 F. Supp. 411, 415 (E.D. Pa. 1995). The Court will deny the motion regarding official capacity claims against the Council Defendants. *See, e.g.*, *Capresecco v. Jenkintown Borough*, 261 F. Supp. 2d 319, 322 (E.D. Pa. 2003) (refusing to dismiss individual defendants sued in their official capacities even where borough itself was a defendant).

Second, Defendants argue that Conner's claim for punitive damages against the Borough must be dismissed. Punitive damages are not available against the Borough under Conner's § 1983 claims.[3] *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981). Nor are punitive damages available against the Borough under Conner's state law claims. *See Bensalem Twp. v. Press*, 501 A.2d 331, 338 (Pa. Commw. Ct. 1985); *see also Feingold v. Se. Pa. Transit Auth.*, 517 A.2d 1270, 1276-77 (Pa. 1986). Conner's claim for punitive damages is dismissed to the extent it is asserted against the Borough or the Council Defendants in their official capacities.

The Court now considers, in turn, whether the facts alleged in the complaint, taken as true, state a plausible claim for relief under each of the asserted counts.

---

[2]   It is unclear whether Conner is suing the Council Defendants in their official capacities, their individual capacities, or both.

[3]   Conner concedes that punitive damages are not available against the Borough under § 1983, but limits the application of this bar to Count IV-Civil Conspiracy and Civil Rights § 1983. (Opp'n Br., Doc. No. 14, p. 7). Yet Conner's cause of action for violation of his federal due process rights also arises under § 1983. *See Grammer v. John J. Kane Reg'l Ctrs–Glen Hazel*, 570 F.3d 520, 525 (3d Cir. 2009) ("42 U.S.C. § 1983 is a vehicle for imposing liability against anyone who, under color of state law, deprives a person of rights, privileges, or immunities secured by the Constitution and laws.") (quotation omitted). Therefore, the bar to punitive damages against the Borough under § 1983 likewise applies to Count I-Due Process-Violation of Federal Constitution.

Violation of Federal Due Process (Count I)

Conner alleges that the Borough violated his procedural due process rights under the Fourteenth Amendment to the United States Constitution by discharging him before holding a hearing that would have allowed him to challenge the discharge. (Compl. ¶¶ 25, 26.) The Fourteenth Amendment prohibits a state from depriving a person of an interest in property without due process of law. Defendants do not dispute that Conner had a property interest in his continued employment as police chief. *See Bartal v. Borough of Lauredale*, 515 F. Supp. 2d 556, 561 (E.D. Pa. 2007) ("[The Borough Code of Pennsylvania] confers a property interest upon police officers in their continued employment."). Once a property interest is established, however, "the question remains what process is due." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).

To make this determination, courts employ a three-factor test. *See, e.g., Dee v. Borough of Dunmore*, 549 F.3d 225, 232 (3d Cir. 2008). The courts balance (i) the private interest that will be affected by the official action, (ii) the risk of an erroneous deprivation of such interest through the procedures used and the probative value, if any, of additional or substitute procedural safeguards, and (iii) the government interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Id.* (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).

Viewing the allegations in the complaint through this lens, the Court finds that Conner has pled a plausible claim that Defendants violated his federal right to procedural due process. *First*, Conner's interest in his continued employment is significant. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 543 (1985) ("[T]he significance of the private interest in retaining

employment cannot be gainsaid. We have frequently recognized the severity of depriving a person of the means of livelihood.").

*Second*, by providing Conner with no notice or opportunity to be heard, the Borough heightened the risk of an erroneous deprivation.[4] *See Dee*, 549 F.3d at 232 ("[W]hen an individual is not provided with any form of pre-deprivation process . . . the risk of an erroneous deprivation of his constitutionally protected interest . . . is heightened considerably."). This heightened risk is evidenced by the fact that the Borough Council based its decision on statements that Conner had made about his fitness to return to work six months before the Council's decision. (Mot. to Dismiss, p. 20.) Conner was not afforded a pre-termination opportunity to address the Council's concerns or state reasons why he should not be terminated even if not medically fit to return to work at the time. *See Loudermill*, 470 U.S. at 543 ("Even where the facts are clear, the appropriateness or necessity of the discharge may not be; in such cases the only meaningful opportunity to invoke the discretion of the decisionmaker is likely to be before the termination takes effect.").

*Third*, providing Conner with notice of the special session and allowing him to respond to the Borough's concerns would not have placed any additional administrative burdens on the Borough. Therefore, Conner was at least constitutionally due pre-termination notice and an opportunity to respond. Accepting all of the facts alleged as true, the complaint states a plausible claim that Conner was not afforded this minimum protection. *See Loudermill*, 470 U.S. at 546 ("The essential requirements of due process . . . are notice and an opportunity to respond.").

---

[4] The parties do not present any facts to explicitly show whether Conner received sufficient notice of the October 21st special session at which he was discharged. Accepting all of Conner's allegations as true and viewing all reasonable inferences drawn from those allegations in the light most favorable to Conner, as the Court must do at this stage, the Court finds, for purposes of this motion, that Conner did not receive sufficient notice of the October 21st special session. *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

6

Defendants contend that Conner was not entitled to a pre-termination hearing for two reasons, both of which the Court finds unpersuasive.  First, Defendants contend that Conner was not entitled to a pre-termination hearing because he was discharged due to a "physical disability that was well documented" rather than for misconduct.  (Mot. to Dismiss, p. 20.)  Defendants' distinction is immaterial.  The Supreme Court's analysis in *Loudermill* applies to "public employee[s] who can be discharged only for cause."  470 U.S. at 535.  And § 46190 of the Commonwealth Borough Code lists "[p]hysical . . . disability affecting his ability to continue in service . . . ." as one of six causes for which a chief of police can be removed.  53 P.S. § 46190.[5]  Defendants' characterization of the other five grounds for discharge as "misconduct" does not negate Conner's entitlement to a pre-termination hearing for a "physical disability" discharge.

Second, Defendants contend that Conner was not entitled to a pre-termination hearing because there were "substantial basis for post-termination due process" under state law.  (Mot. to Dismiss, p. 21.)  But "minimum procedural requirements are a matter of federal law, they are not diminished by the fact that the State may have specified its own procedures that it may deem adequate for determining the preconditions to adverse official action."  *Loudermill*, 470 U.S. at 541 (citing *Vitek v. Jones*, 445 U.S. 480, 491 (1980)) (quotation omitted).  The Third Circuit has held that, absent extraordinary situations, adequate post-termination procedures do not make pre-termination procedures unnecessary.  *See Schmidt v. Creedon*, 639 F.3d 587, 589-90 (3d Cir. 2011) ("We now hold, except for extraordinary situations, under Pennsylvania law, even when union grievance procedures permit a policeman to challenge his suspension after the fact, a brief and informal pre-termination or pre-suspension hearing is necessary.").

---

[5] Several months after Conner's termination, the statutory sections at issue here, 53 P.S. §§ 46190 and 46191, were repealed and reenacted under Title 8 of the Pennsylvania Consolidated Statutes, §§ 1190 and 1191.  *See* Act of Apr. 18, 2014, P.L. 432, No. 37.

The facts presented do not show that any extraordinary situation existed that would relieve the Borough of holding a pre-termination hearing. *See Solomon v. Phila. Housing Auth.*, 143 F. App'x. 447, 453 (3d Cir. 2005) (noting "post-deprivation process alone may satisfy the requirements of the Due Process Clause if a state must act quickly . . . ."). Indeed, Conner had been off the job due to alleged injuries for over a year before he was terminated. There was no need to act quickly or precipitously. As such, the facts in the complaint state a plausible claim that Defendants violated Conner's federal due process rights by terminating him without pre-termination notice and an opportunity to be heard.

Violation of State Due Process (Count II)

Conner also alleges that he was terminated in violation of his procedural due process rights under Pennsylvania statutory law because he was not afforded pre-termination notice and an opportunity to be heard. (*See* Compl. ¶ 33.) There is, however, no such requirement under the Pennsylvania laws Conner cites. Conner was entitled to contest his termination after the fact through the Civil Service Commission. *See* 53 P.S. § 46191. He was entitled to appeal any adverse ruling by the Civil Service Commission through the Pennsylvania court system. *Id.* This was the procedural due process owed Conner under Pennsylvania statute. *See Guthrie v. Borough of Wilkinsburg*, 458 A.2d 307, 308 (Pa. Commw. Ct. 1983) ("[A] borough police officer . . . shall not be suspended, discharged or demoted without the procedural due process rights within the Borough Code.").

Conner cannot maintain a due process violation under Pennsylvania law without alleging facts to show that the procedures provided were inadequate or unavailable to him. *Cf. Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000) ("[T]o state a claim for failure to provide due process, a

plaintiff must have taken advantage of the processes that are available to him or her, unless those processes are unavailable or patently inadequate."). Conner has made no such allegations. His claim for violation of procedural due process under Pennsylvania statute is dismissed.

Retaliation and Wrongful Termination in Violation of Public Policy (Count III)

Conner alleges he was wrongfully terminated in retaliation for exercising his rights under the Pennsylvania Workers' Compensation Act, in violation of public policy. (Compl. ¶ 41). Although a "cause of action exists under Pennsylvania law for wrongful discharge of an employee who files a claim for workers' compensation benefits," the cause of action exists only as a safeguard for at-will employees. *Shick v. Shirey*, 716 A.2d 1231, 1238 (Pa. 1998); *see also H&R Block E. Tax Servs., Inc. v. Zarilla*, 69 A.3d 246, 252 (Pa. Super. Ct. 2013) ("[T]he tort of wrongful discharge is available only where there is an employment-at-will relationship."). "An employee enjoying statutory protection from wrongful discharge may not appeal to the common law as an additional means of policy implementation." *Brown v. Tucci*, 960 F. Supp. 2d 544, 587 (W.D. Pa. 2013) (quotation omitted); *see also Macken v. Lord Corp.*, 585 A.2d 1106, 1108 (Pa. Super. Ct. 1991) ("Pennsylvania recognizes a cause of action for wrongful discharge *in the absence of a statutory remedy*") (emphasis added).

Conner was not an at-will employee of the Borough. He could be removed only for the reasons specified in § 46190 of the Pennsylvania Borough Code. 55 P.S. § 46190. He had post-termination procedural protections not available to at-will employees. Conner, therefore, cannot assert a common law claim for wrongful termination. Conner's claim for retaliation and wrongful termination in violation of public policy is dismissed. *See, e.g.*, *McAlee v. Independence Blue Cross*, 798 F. Supp. 2d 601, 607 (E.D. Pa. 2011) ("In light of the strict

limitations on Pennsylvania's common law action for wrongful discharge in tortious violation of public policy and the availability of a [statutory] remedy . . . the Court finds that Plaintiff may not bring his common law claim.").

Conspiracy (Count IV)

Conner alleges that the Council Defendants conspired to terminate him without due process during the special session.  (*See* Compl. ¶ 47.)  Conner bases this claim on the fact that the Council Defendants "voted in agreement to terminate" Conner and "accused [Conner] of being a drug addict."  (Compl. ¶¶ 49, 51.)  He further alleges that Council Defendant Reeves "notified non-council persons" that Conner was being terminated and said "fire his ass" during public meetings.  (Compl. ¶¶52, 53.)

These factual allegations are insufficient to state a claim for conspiracy.  To survive a motion to dismiss, a complaint alleging a civil rights conspiracy must include "[s]pecific allegations of an agreement to carry out the alleged chain of events . . . ."  *Rosembert v. Borough of E. Lansdowne*, 14 F. Supp. 3d 631, 648 (E.D. Pa. 2014).  "Mere conclusory allegations that a conspiracy existed will not survive a motion to dismiss."  *Rogers v. Mount Union Borough*, 816 F. Supp. 308, 314 (M.D. Pa. 1993).

Conner simply infers a conspiracy based on parallel conduct and the statements of a single alleged conspirator.  He does not allege any specific facts to state a plausible claim that there was an agreement among the Council Defendants to violate Conner's rights.  And while each Council Defendant did vote to terminate Conner, those votes are consistent with independent action.  *See SigmaPharm, Inc. v. Mut. Pharm. Co., Inc.*, 772 F. Supp. 2d 660, 669 (E.D. Pa. 2011) ("[A]llegations of otherwise lawful parallel conduct, without more, are

insufficient to render an alleged conspiracy plausible."). Without more, Conner's factual allegations fail to state a plausible claim for conspiracy.

Violation of Pennsylvania Wage Laws (Count V)

In his opposition brief, Conner represents that he voluntarily withdraws Count V of the complaint. (Opp'n Br., pp. 6-7.) The Court, therefore, will not address this claim.

Conversion of Police Pension Fund (Count VI)

Conner alleges Defendants have converted his police pension fund. Conner contends that under Pennsylvania's Municipal Police Pension Law, 53 P.S. § 767, he is either eligible for pension benefits or entitled to a full refund, with interest, of the money he invested in the pension fund. (*See* Compl. ¶ 70.) He alleges that the Defendants converted his pension funds because they have "failed to either determine [Conner's] eligibility for the pension benefits or to refund moneys paid by [Conner] with interest." (Compl., ¶ 71.)

Under Pennsylvania law, conversion is the "deprivation of another's right of property, or use or possession of a chattel, or other interference therewith, without the owner's consent and without legal justification." *Universal Premium Acceptance Corp. v. York Bank & Trust Co.*, 69 F.3d 695, 704 (3d Cir. 1995) (quoting *Cenna v. United States*, 402 F.2d 168, 170 (3d Cir. 1968)).

Conner fails to allege facts sufficient to satisfy the "without legal justification" prong of a conversion claim. Conner only alleges that he is due either pension benefits or a refund and that Defendants refuse to determine his eligibility or pay him the refund. (Compl. ¶¶ 70-71.) He does not allege facts to show that the Defendants' refusal is not legally justified. Conner does

not even allege that he has made a request for pension payments or a refund.  Conner's conversion claim is dismissed.[6]

Violation of 53 P.S. § 46190(a) (Count VII)

Finally, Conner alleges that he was terminated for "political reasons" in violation of 53 P.S. § 46190.  He bases this claim on the circumstances surrounding the special session, including the Counsel Defendants' admitted use of the workers' compensation report in its decision.  (Compl. ¶ 75.)  He also alleges that Counsel Defendant Reeves stated, "fire his ass" during public meetings and "made it publically known that she wanted her husband to replace [Conner] as chief of police."  (*Id*.)

Viewed in the light most favorable to Conner, the factual allegations in the complaint fail to state a plausible claim that he was terminated for "political reasons."  Courts generally understand "political reasons" to be similar to "political beliefs," "political views," or "political affiliation."  *See, e.g.*, *Genes v. City of Duquesne*, 367 A.2d 327, 329 (Pa. Commw. Ct. 1976); *see also, e.g.*, *Savarese v. Agriss*, 883 F.2d 1194, 1210 (3d Cir. 1989) (affirming a jury verdict that plaintiff was fired for political reasons where he refused to change his party affiliation).  This interpretation is in accordance with Pennsylvania's various civil service acts, which seek to "supplant the 'spoils system' and to remove political affiliation as a reason for dismissal from office."  *Pawell v. Unemployment Comp. Bd. of Review*, 22 A.2d 43, 46 (Pa. Super. Ct. 1941).

---

[6]     The Borough contends that under the Pennsylvania Political Subdivision Tort Claims Act, 42 Pa.C.S. § 8541, *et. seq.*, the Borough "cannot be liable for an intentional tort such as theft or conversion." (Mot. to Dismiss, p. 13.) Under Pennsylvania law, however, conversion is not necessarily an intentional tort.  *L.B. Foster Co. v. Charles Caracciolo Steel & Metal Yard, Inc.*, 777 A.2d 1090, 1095 (Pa. Super. Ct. 2001) ("[T]he tort of conversion does not rest on proof of specific intent to commit a wrong.").  Further, depending on how Conner's pension funds are held, his conversion claim could fall within the Tort Claims Act exception for liability involving the "care, custody or control of personal property of others in the possession or control of the local agency." 42 Pa.C.S. § 8542 (b)(2).  For these reasons, the Court will afford Conner the opportunity to amend his conversion claim against the Borough.

Conner does not allege that there was friction between him and the Council Defendants regarding Conner's political views or affiliations. Nor does he allege that he was terminated after a change in the controlling political party. *See O'Peil v. Pa. State Civil Serv. Comm'n*, 225 A.2d 546, 547 (Pa. 1967) (Plaintiff alleged he was terminated for political reasons because "a high ranking member of the Republican Party had told him that he had been fired because his home district had been carried by the Democratic Party."). Conner's factual allegations may demonstrate that Council Defendant Reeves displayed some personal animosity toward Conner. Those allegations against a single Councilmember, however, are insufficient to show that the Council as a whole voted to terminate Conner for political reasons. Count VII is dismissed accordingly.

Leave to Amend

"[I]f a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile." *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004). "[T]he general rule is that leave to amend 'shall be freely given when justice so requires.'" *Howze v. Jones & Laughlin Steel Corp.*, 750 F.2d 1208, 1212 (3d Cir. 1984) (quoting Fed. R. Civ. P. 15(a)). Here, Conner can cure the deficiencies of Counts II, IV, VI, and VII with additional factual allegations, so those counts are dismissed without prejudice. Because Pennsylvania does not recognize a common law cause of action for wrongful termination where an employee is not an at-will employee, however, Conner cannot cure the deficiencies of Count III. That Count is dismissed with prejudice.

An appropriate order follows.

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.